# Turner v. Commonwealth.

APPEAL FROM CLAY CIRCUIT COURT.

1. **The right to an appeal in felony cases is not a constitutional right**, and the accused, having had his trial below, must conform to the rules prescribed by law for bringing his case to this court, and to the practice adopted here as to its final disposition; and where there is a failure to prosecute the appeal, a dismissal necessarily follows.

2. **Non-suit—Reinstatement of Appeal.**—While a suggestion that a prisoner appealing is without counsel, or unable to employ counsel, would require the interposition of this court in his behalf, yet, after

\* This case has only recently been ordered to be reported.

the lapse of many years, this court cannot rehear a case which was dismissed for want of prosecution, simply because counsel neglected the case, or the condemned was unable to employ counsel, although the condemned has all the time been confined within the walls of a prison.

The court, after the lapse of twelve years, refuses to rehear this case, which was dismissed for want of prosecution, but has examined the facts, and discusses them for the purpose of showing that the court must have had a knowledge of the case by an inspection of the record before the non-suit was entered.

3. HOMICIDE NOT JUSTIFIED BY PREVIOUS THREATS AND ATTACKS OF DECEASED.—The mere fact that one has been previously threatened and attacked with a deadly weapon by another will not justify him in lying in wait and slaying his adversary.

IRA JULIAN FOR APPELLANT.

1. The rule of this court giving to the appellee the right to a non-suit upon the failure of the appellant to appear upon the calling of the cause cannot be applied to appeals in criminal cases.

If the personal appearance of the prisoner is dispensed with in appellate courts, he must be there represented by counsel, and the denial to the prisoner of both personal presence and counsel is a violation of his constitutional rights. (Const. of U. S., article 6 of Amendments; Const. of Ky., art. 13, sec. 12; Criminal Code, secs. 327-329; 1 Archbold's Criminal Practice and Pleading, vol. 1, p. 724, note; Donnelly v. The State, 2 Dutcher's N. J. Rep., pp. 472, 601.)

2. There is no limitation against the exercise by this court of a reasonable discretion upon a motion to reinstate an appeal which has been dismissed for want of prosecution. (Mackey v. Commonwealth, 80 Ky., 346.)

3. In view of the previous threats and attacks of the deceased, the prisoner, Turner, was entitled to an instruction to the effect that if he had reasonable grounds to believe, and did believe, that the presence of his adversary put his life in imminent peril, he could then kill him, and was " not bound to wait until he was actually assaulted." (Phillips v. Commonwealth, 2 Duv., 328; Bohannon v. Commonwealth, 8 Bush, 486; Kennedy v. Commonwealth, 14 Bush, 351.)

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLEE.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

James Turner having been indicted for the murder of William Middleton in the Harlan Circuit Court, was tried in the Clay circuit under a change of venue, and,

upon the hearing, was convicted and sentenced to the penitentiary for life. The trial was had in February, 1875, and the case brought to this court on the 8th of March, 1875, and set for hearing on the 19th of the same month. The case was then passed, to be heard on the 25th of March, and again to be heard on the 3d of April, and finally set for hearing on the first day of the succeeding June term of this court, and on the 11th of that month a non-suit was ordered and the appeal dismissed. On the 16th of the present month, September, 1886, a motion was made to redocket the case, and the case redocketed, and counsel for the accused has been heard on the motion to redocket (that question being reserved at the instance of the attorney for the State), and on the merits.

The prisoner has been confined in the State prison for more than eleven years since the non-suit was entered, and, for the first time, seems to have discovered that he was not represented by counsel in this court on the appeal, and claiming that many errors were committed to his prejudice during the trial in the court below, is now asking this court to reverse the judgment of conviction and grant him a new trial.

Without determining the extent of the power of this court over its orders in a criminal case after the expiration of the term at which the case has been finally disposed of, it is plain that some limitation must be placed upon the exercise of such a discretion, and it is neither reasonable nor proper that after such a lapse of time this court should indulge a motion like this, and reopen the case for the purpose of passing upon the objections made to the judgment below. The right to

an appeal in such cases is not a constitutional right, and the accused, having had his trial below, must conform to the rules prescribed by law for bringing his case to this court, and to the practice adopted here as to its final disposition.   Instructions in the trial below may have been erroneous and prejudicial to the accused, still certain rules of practice must be observed with regard to exceptions before such errors can be corrected, and when there is a failure to prosecute the appeal, the rule of practice in this court must be observed or a dismissal necessarily follows.

A suggestion that the prisoner is without counsel or unable to employ one would require the interposition of the court in his behalf, but after the lapse of so many years, although confined within the walls of a prison, it would be a dangerous precedent to entertain such motions, or to rehear cases by reason of the neglect of counsel or the want of ability on the part of the condemned to make an employment.

The condemned was living in the county where the indictment was found, with, no doubt, friends, or those interested in his behalf, surrounding him.   The testimony so indicates, and besides, the court, before entering a non-suit, may have looked into the case with a view of ascertaining the nature of the charge, and the character of the proof to sustain it.   We have read the testimony in this case when considering the motion, and we do not see upon the facts that either an instruction for manslaughter or self-defense should have been given.

That there was a deadly feud existing between the Middletons and the condemned is manifest.   The affiant

here had waylaid Middleton more than once for the purpose of killing him, and while there is proof showing that the Middletons had attempted to induce others to kill Turner, their personal attacks on the latter were made in an open and undisguised manner.

That they would have killed Turner whenever an opportunity offered is plain, and equally as manifest that Turner was seeking an opportunity to kill the Middletons.

On the day and at the time of the killing, the deceased was riding along the highway with one or two of his neighbors, going to the county seat, and when arriving at a bend in the road, about two miles from Middleton's house, those who were with Middleton heard the report of a gun, perhaps two, and saw Middleton falling from his horse, having been shot in the back. The parties shooting Middleton were in ambush, and fired evidently without any word of warning to Middleton or those with him. Neither Turner nor Pace was in company with the parties, or known to be at the place where the deceased was shot. They were seen afterwards going from the place, and their tracks and other circumstantial testimony of a strong character tended to the conviction.

There is no case establishing the doctrine that one has the right to pursue his adversary until out of danger, except the Phillips case, 2 Duv., 328, that has been overruled, and certainly no case that would justify or excuse one for lying in wait and slaying his adversary, without or with warning, although he had been previously threatened and assaulted with a deadly weapon by the deceased. Such a ruling would not only invite,

but encourage, guerrilla warfare, where the wicked and reckless desperado could select his victim, and from some secluded spot take his life, and then, by proof of antecedent threats or former assaults by the deceased, demand an acquittal.

Such is not the law of the Bohannon case, 8 Bush, 481, or any other authority referred to by counsel.

Such a light estimate of the value of human life by the courts of the country would be a mockery of justice and a license to those who have no regard for the laws of their State, to continue their deeds of assassination and murder.  We see no reason for entertaining the motion further, and nothing but the zeal of counsel, that is commendable, has induced the court to examine the facts with a view of showing that the court had a knowledge of this case by an inspection of the record before the non-suit was entered.

The case is ordered to be stricken from the docket.

---

* CASE 14—PETITION EQUITY—OCTOBER 9, 1886.