**Ted SIZEMORE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 13, 1970.

Alva A. Hollon, Hollon & Hollon, Hazard, for appellant.

John B. Breckinridge, Atty. Gen., Joseph L. Famularo, Asst. Atty. Gen., Frankfort, for appellee.

WADDILL, Commissioner.

Appellant, Ted Sizemore, was convicted of the crime of armed robbery as denounced by KRS 433.140 and sentenced to serve twenty-one years in the state penitentiary. For reversal of the conviction he contends that (1) the trial court erred in failing to appoint counsel to represent him during the trial and (2) that the penalty inflicted upon him was not authorized by law.

On the day this case was set for trial, but prior to the arraignment of appellant in open court, a hearing was conducted in the judge's chambers and the recorded proceedings that took place were as follows:

*"COURT:*

Mr. Sizemore, hold up your right hand and be sworn. Do you solemnly swear the statements you make at this hearing will be the truth and nothing but the truth, so help you God.

*"MR. SIZEMORE:* (Raising his hand) I do.

*"INTERROGATION BY THE COURT:*

"Q. 1 You are charged here with robbery, is that right?

"A. Yes, sir.

"Q. 2 And there has been a former trial and a hung jury in this case? Is that right?

"A. Yes, sir.

"Q. 3 Now, before the other trial you made an affidavit you didn't have money or funds to employ counsel?

"A. I didn't at that time.

"Q. 4 You were in jail at that time, in default of bond?

"A. Yes, sir.

"Q. 5 Now, since the other trial, have you had any money?

"A. Yes, sir.

"Q. 6 How much did you have?

"A. I guess I had Five Hundred ($500) Dollars, or something.

"Q. 7 What did you do with that Five Hundred ($500) Dollars?

"A. I got a bond filled [sic] with it.

"Q. 8 Who filled [sic] your bond?

"A. Johnson Bonding Company.

"Q. 9 You paid them Five Hundred ($500) Dollars to execute bond for you and you are out now on bond?

"A. Yes, sir.

"Q. 10 Did you ever pay the attorneys the Court appointed to defend you, anything?

"A. No, sir.

"Q. 11 Do you own an automobile?

"A. No, sir.

"Q. 12 You drive an automobile don't you?

"A. No, sir.

"Q. 13 Do you own any property at all?

"A. No, sir.

"Q. 14 During the time this case was pending and you were in jail, where did you get this Five Hundred ($500) Dollars?

"A. I accumulated it in jail, gambling and playing poker.

"Q. 15 You accumulated Five Hundred ($500) Dollars gambling and playing poker and instead of saving money to pay an attorney fee, you used it to get yourself out of jail on bond?

"A. Yes, sir, to obtain my freedom.

"COURT:

Now this Court is not going to require attorneys, appointed by the Court, to defend men free of charge who have Five Hundred ($500) Dollars in cash to pay for bonding companies to release them on bond.

Do you attorneys want to withdraw from the case? If you do, I will permit you to withdraw and I will go ahead and try the case. It's a question of what you want to do.

(At this point both A. Dale Bryant and Thomas B. Miller, the appointed attorneys, left the room and upon their return announced to the Court that they did desire to withdraw from this case)

*"COURT:*

Let the record show Dale Bryant and Thomas Miller who had been appointed to defend this man and were defending him at the time he paid the bonding company Five Hundred ($500) Dollars, were not paid anything and haven't been paid anything to the present time and are objecting to defending a man, free of charge, who has Five Hundred ($500) Dollars to pay for a bond."

The trial court then interrogated the chief of police of Hazard, Kentucky, who was apparently well-acquainted with Ted Sizemore and his habits. In substance, he testified that Sizemore ordinarily either bummed people on the street for money or borrowed it, that he had been unemployed since the last time he went to the penitentiary and that Sizemore was "reported to own a 1956-Model automobile."

The trial court stated "let the record show the court released the two attorneys and we are going ahead and try the case." Thereupon the court and the parties concerned returned to the courtroom where the trial court asked Sizemore if he were ready for trial. Appellant replied in the affirmative. A jury was empaneled and the case proceeded to trial with appellant representing himself.

■ The Sixth Amendment to our Federal Constitution provides:

"In all criminal prosecutions the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense."

This right was extended to indigent defendants in state courts by the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. Also, Section 11 of the Kentucky Constitution and Rule 8.04 of the Kentucky Rules of Criminal Procedure require an indigent person charged with the commission of a felony to be furnished with counsel.

The assistant attorney general, who submitted a brief on behalf of the Commonwealth, concedes that an indigent defendant is entitled to counsel and he points out that the appellant was assigned counsel upon his allegations of poverty. He contends that the trial court was justified in later releasing the appointed attorneys from representing appellant when it was shown that appellant had spent $500.00 to obtain a bail bond rather than paying his appointed attorneys a fee. He further urges that, since appellant did not ask the trial court to appoint counsel to defend him prior to the instant trial and did not object to the commencement of the trial, he cannot now validly claim that the trial court committed reversible error in failing to reappoint counsel to defend him.

■ It is understandable that the trial judge took a dim view of appellant's conduct when appellant did not compensate his appointed counsel when he had had the financial means to do so. However, the trial judge transgressed his authority by releasing the appointed attorneys. In this jurisdiction when a defendant in a criminal case has been found to be indigent his attorneys are required to defend him whether they are or are not being compensated. Unfortunately, our Legislature has not provided funds to pay counsel appointed by the court, nor has it provided a public defender system. The record reflects that appellant was without funds or property at the time of his arraignment. Consequently, we hold that he was deprived of his constitutional right to have counsel to defend him, the denial of which entitles him to a reversal of the judgment of conviction.

■ We are fully aware that in certain circumstances a defendant in a criminal prosecution may waive his right to have counsel provided for him. However, a waiver of counsel in a felony case may not be permitted unless it appears that the waiver was intelligently, competently, understandingly and voluntarily made by the defendant. Tanner v. Commonwealth, Ky., 375 S.W.2d 694; Schneider v. Commonwealth, Ky., 332 S.W.2d 250; Stallard v. Witherspoon, Ky., 306 S.W.2d 299 and Neal v. Commonwealth, Ky., 303 S.W.2d 903. We are unwilling to accept the argument that the alleged waiver of counsel was voluntarily made by appellant.

In the event of a retrial of the case the trial court will determine at that time

whether or not appellant is indigent and, if the testimony so shows, the court will assign counsel to defend him.

Appellant's contention that the penalty inflicted upon him by the verdict and judgment was not authorized by law is without merit. KRS 433.140 authorizes the imposition of the following penalties upon the conviction of an accused charged with armed robbery or burglary: confinement in the penitentiary for not less than ten years or for life, or by death. The twenty-one-year sentence imposed on appellant is specifically authorized by this statute.

The judgment is reversed with directions to set it aside and to grant appellant a new trial.

HILL, C. J., and MILLIKEN, NEIKIRK, PALMORE, STEINFELD and REED, JJ., concur.

OSBORNE, J., dissents.

OSBORNE, Judge (dissenting).

It is conceded by all conversant with the subject that the Sixth Amendment requires that an indigent defendant have the right to court-appointed counsel in all criminal cases. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. As far as we in Kentucky are concerned, this is not a right arising solely from the federal constitution. Section 11 of our state constitution has been construed to require the presence of counsel.

In my opinion, the majority in this case completely missed the point. The question is not one of right to appointed counsel. This point is conceded. There are three questions presented in the case.

1. Was there an intelligent waiver of the right to counsel?

2. Does the record conclusively show the trial court was in error when it found the defendant was not indigent?

3. If the trial court was in error for failure to appoint counsel, was this cured when no objection was timely made in the trial court?

On the first point, after the initial counsel had been relieved, the record does not indicate that the appellant made a motion or indicated in any manner his desire to have another attorney appointed. He fully acquiesced in the beginning of the trial and he failed to ask for counsel. The record does not indicate mental incapability upon the part of the defendant or in any way indicate that he did not have a full and complete understanding of what transpired. I believe this is an intelligent waiver of the right to appointed counsel.

On the second point, the trial court found the defendant was not indigent. This is a finding of fact and insofar as I am able to determine should be binding on this court and all other appellate courts unless clearly erroneous. If the defendant was not indigent, there was no right to appointed counsel.

On the third point, we have many times said that we will not hear defendants upon points raised for the first time in this court. The defendant did not raise the point in the trial court that he was not properly appointed counsel; it was raised for the first time in this court. This was too late.

If this court and all other courts would limit the appointment of counsel to those defendants proven to be indigent who did not intelligently waive the right, the burden on the trial bar of this Commonwealth for the defense of these people would still be staggering. To ask a lawyer to defend a person who fritters his resources away on useless bonds is appalling. Of no other profession does our society demand such contribution of time and effort. The law does not require the medical profession

to render free services no matter how worthy or indigent the patient. Even the ministry expects to be paid when performing marriages and funerals. The cost of obtaining legal education mounts from day to day. The expenses of maintaining an office and hiring help to operate a law office are staggering. Society has no right to demand of a lawyer that he donate his time and services to those who in many instances are perfectly able to pay for it. The taking of any man's property, even be he a lawyer, without just compensation violates every known constitutional principle. One of our honorable presidents, Abraham Lincoln, first observed that a lawyer's time and advice is his stock in trade. Now he must donate his stock in trade to an ungrateful few in an even more ungrateful society. The great evil that has been done in this instance was first done when the courts held that an indigent defendant must be appointed counsel and did not designate the proper governmental officials to compensate the counsel. In my opinion the courts have never had the right to say to a lawyer you must represent any man without compensation.

The Supreme Court has held that black children are entitled to equal education but they have never indicated that any educator must furnish it out of his own pocket. As far as I know the lawyer is the only person in society who is expected to give of his services without pay. This cannot be justified.

If courts have the inherent power to direct a lawyer to defend an indigent criminal then those same courts have the inherent power to direct the state treasurer to pay the lawyer. If the furnishing of counsel is the obligation of the state then it is the obligation of all the people collectively and should be paid out of the common treasury. How did the burden of society get shifted to the shoulder of the lawyer alone? He should not have to bear it. I refuse as a judge to require it.

For the foregoing reasons, I dissent.